## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

QUALITY LEASING CO., INC.,

        Plaintiff,

        v.

FRANK THOMAS SHUMATE, JR. and
MARK W. LOPEZ,

        Defendants.

CAUSE NO.: 2:18-CV-23-TLS

## OPINION AND ORDER

On May 24, 2018, Defendants Frank Thomas Shumate, Jr., and Mark W. Lopez filed a

Motion to Dismiss for Lack of Jurisdiction [ECF No. 16], pursuant to Fed. R. Civ. P. 12(b)(1),

asking the Court to abstain under the doctrine established in *Colorado River Water Conservation*

*Dist. v. United States*, 424 U.S. 800 (1976). On July 5, 2018, after having been granted an

extension, the Plaintiff filed a response [ECF No. 26]. On July 19, 2018, the Defendants filed a

reply [ECF No. 30], and on August 17, 2018, after the Court granted approval, the Plaintiff filed

a sur-reply [ECF No. 35]. The case was then reassigned from the docket of the late Judge Rudy

Lozano [ECF No. 36].

## BACKGROUND

In 2015, the Plaintiff entered into a Master Lease Agreement with Cinch Energy

Services, LLC. The Master Lease Agreement arranged for the Plaintiff to acquire commercial

equipment and lease it back to Cinch Energy. The Defendants each signed a contract

guaranteeing Cinch Energy's obligations under the Master Lease Agreement ("Guaranty

Contracts"). The Guaranty Contracts provide, in relevant part:

> the undersigned (if more than one, then jointly and severally) as a direct and primary obligation, absolutely and unconditionally, guarantees to the Lessor . . . the prompt payment of all rent and other amounts to be paid by Lessee to Lessor under the Agreement(s) and the performance of all terms, conditions, covenants and obligations of each and every of the Agreement(s), irrespective of any invalidity or unenforceability thereof or the existence of security for the Agreement(s).
>
> * * *
>
> The obligations of each Guarantor hereunder shall in no way be affected or impaired by reason of the occurrence from time to time of any of the following with respect to the Master Lease, Supplement, or this Personal Guaranty (collectively, the "Instruments") . . .
>
> * * *
>
> (iii) The supplementing, modification or amendment (whether material or otherwise) of any of the Instruments or any of the obligations of the Lessee or Guarantor as set forth in the Instruments;
>
> * * *
>
> (v) The voluntary or involuntary liquidation, dissolution, sale of all or substantially all of the property . . . or other similar application or proceeding affecting Lessee, Guarantor or any of their assets;
>
> (vi) The sale, transfer or conveyance of the Equipment or any interest therein to any party, whether now or hereafter having or acquiring an interest in the Equipment;
>
> (vii) The release of Lessee from the performance or observance of any of the agreements, covenants, terms or conditions contained in the Master Lease, Supplement, Agreement or related documents by operation of law.

Compl. Ex. C, ECF No. 1-1, p. 22–23 (Defendant Lopez), p. 25–26 (Defendant Shumate).

The Plaintiff originally filed a complaint in Texas State Court alleging various claims

against Cinch Energy and the Defendants, including breach of the personal Guaranty Contracts.

The Defendants and Cinch Energy filed an answer and a counterclaim. The Plaintiff moved for

partial summary judgment against all three Defendants on January 11, 2017. The Texas State

Court denied the Plaintiff's motion. The Plaintiff subsequently filed a notice of nonsuit against the individual Defendants, and the Texas Court ordered the claims and causes against the individual Defendants dismissed without prejudice.[1] The Plaintiff then filed the instant suit against the individual Defendants in this Court (the "federal suit"). The breach of contract action against Cinch Energy remains pending in the Texas State Court (the "state suit").

In the state suit, in response to the Plaintiff's claims, the Defendants and Cinch Energy alleged that the Plaintiff "represented to [d]efendants [including Cinch Energy] that Plaintiff would accept $231,791.74 as a full payoff which, as per the terms of the agreement, would include a sale of the subject equipment to [] Cinch Energy Services, LLC." Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., ECF No. 17-2, p. 52 ¶ B. Cinch Energy accepted the offer regarding payoff and informed the Plaintiff that it would sell the property to a third party for an amount that would cover the new total owed to Plaintiff. *Id*. In the state suit, the Defendants and Cinch Energy alleged this agreement constitutes a novation, replacing the Master Lease Agreement. The Plaintiff then repossessed the equipment Cinch Energy intended to sell, accepted a significantly lower amount for it, and thereby denied the Defendants and Cinch Energy the opportunity to fulfill their obligations under the novation. Based on this behavior, the Defendants and Cinch Energy asserted the defenses of equitable estoppel and failure to mitigate damages against the Plaintiff's breach of contract claims.

---

[1] "In Texas, plaintiffs may nonsuit at any time before introducing all of their evidence other than rebuttal evidence. . . . A nonsuit terminates a case from the moment the motion is filed. . . . At the same time, a nonsuit does not affect any pending claim for affirmative relief . . . . When a case is nonsuited without prejudice, res judicata does not bar relitigation of the same claims." *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tx. 2011) (internal citations and quotations omitted).

## STANDARD OF REVIEW

A federal court's ability to abstain from a case that falls within its jurisdiction "'is the exception, not the rule,' and can be justified only in exceptional circumstances." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 496 (7th Cir. 2011) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)). Further, *Colorado River* abstention is permitted in considerably fewer circumstances than the other theories of abstention. *Id.* at 498 (quoting *Colo. River*, 424 U.S. at 818). Under the *Colorado River* doctrine, a federal court may stay or dismiss a suit before it when there is a concurrent state court case and exceptional circumstances exist such that abstention would promote "wise judicial administration." *Colo. River*, 424 U.S. at 817–18. A district court must make a two-part inquiry to determine whether *Colorado River* abstention should apply: (1) whether the concurrent state and federal actions are parallel; and (2) if so, whether "exceptional circumstances" justify abstention. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014).

## ANALYSIS

### A.    The Court May Consider the *Colorado River* Abstention Doctrine

The Plaintiff first argues that, because the Defendants' personal guarantees contained a forum selection clause which states that the Defendants "shall accept venue and be subject to the personal jurisdiction of any Federal or State Court in Indiana," *see* Compl. Ex. C, ECF No. 1-1, p. 23, 26, the Defendants have waived the right to ask this Court to abstain. The Plaintiff cites only *Northwestern National Insurance Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990), in

support of this argument, and in its sur-reply, comments that the Defendants waived their "rights to contest venue and jurisdiction in this Court." Pl.'s Sur-Reply, ECF No. 35, p. 1.

The Defendants have waived the right to contest venue or personal jurisdiction by signing contracts with forum-selection clauses. *See Nw. Nat'l Ins. Co.*, 916 F.2d at 378. However, *Colorado River* abstention is not the same as contesting venue or personal jurisdiction. More importantly, the Court may conduct its own analysis under *Colorado River* even if the Defendants have signed such a forum selection clause, as the Court determines its own jurisdiction. *See, e.g., AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510 (7th Cir. 2001).

## B.    The Federal and Texas State Court Actions Are Not Parallel

"Two suits are parallel for *Colorado River* purposes when 'substantially the same parties are contemporaneously litigating substantially the same issues.'" *Adkins*, 644 F.3d at 498–99 (citing *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752 (7th Cir. 2006)). "A court should examine 'whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues.'" *Id.* at 499 (quoting *Tyrer*, 456 F.3d at 752); *see also Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645–46 (7th Cir. 2011) ("[T]he court must ascertain whether 'substantially the same parties are contemporaneously litigating substantially the same issues in another forum." (quoting *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004))). "In essence, the question is whether there is a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Adkins*, 644 F.3d at 499 (quoting *Clark*, 376 F.3d at 686); *accord Deb v. SIRVA, Inc.*, 832 F.3d 800, 814–15 (7th Cir. 2016); *Huon*, 657 F.3d at 645. Doubts should be resolved in favor of exercising jurisdiction. *Adkins*, 644 F.3d at 499; *see also Huon*, 657 F.3d

at 645 ("If there is any doubt that cases are parallel, a district court should not abstain." (citing *AAR Int'l, Inc.*, 250 F.3d at 520)).

In the earlier-filed state suit, the Plaintiff seeks to recover for breach of the Master Lease Agreement against Cinch Energy, which is the Agreement the Defendants guarantied. In this federal suit, the Plaintiff seeks to enforce rights under the guaranty contracts signed by the Defendants. Therefore, the key question in identifying if these two suits are parallel is whether the outcome of the breach of contract claim in the state court action is determinative of the Defendants' liability under the guaranty contracts in this case. If so, then the suits are parallel: the facts determining the breach of contract would be central to both suits, which involve substantially the same parties. However, if the Defendants' liability under the personal guaranty contracts is independent of whether a breach of the Master Lease Agreement occurred, then the suits are not parallel: the guaranty contracts are separate and the Plaintiff's rights under them can be pursued in this suit. *Cf. Baek v. Clausen*, 886 F.3d 652, 667 (7th Cir. 2018) (noting how a federal civil RICO action and a state court personal guaranty contract action were clearly parallel because the outcome of each turned on the same facts); *see also Freed*, 756 F.3d at 1020–21 ("The factual allegations and legal analyses in the cases largely overlap, and the issues will be resolved largely by referencing the same facts and evidence. Therefore, the issues in the two cases, while not identical, are substantially the same."); *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 593 (7th Cir. 2005) ("While it is true that TruServ chose not to raise the claims in state court, that is not dispositive. The fact is that the state court litigation did not dispose of all the claims presented in the federal case; therefore, we must find that the two cases are not parallel.").

6

At first glance, the cases appear parallel—if Cinch Energy owes no money, then it would seem to follow that the guarantors would not owe, either. *See Loudermilk v. Casey*, 441 N.E.2d 1379, 1384 (Ind. Ct. App. 1982) (noting that generally "the liability of a guarantor is measured by the liability of the principal"). However, "[t]he liability of a guarantor may exceed the principal's if the contract so provides." *Id*.

Therefore, this Court must evaluate the Guaranty Contracts. Under Indiana law:

> A guaranty is a conditional promise to answer for a debt or default of another person. That is, the guarantor promises to pay only if the debtor/borrower fails to pay. The interpretation of a guaranty agreement is governed by the same rules applicable to other contracts. . . . Generally, the nature and extent of a guarantor's liability depends upon the terms of the contract, and a guarantor cannot be made liable beyond the terms of the guaranty.

*TW Gen. Contracting Servs., Inc. v. First Farmers Bank & Tr.*, 904 N.E.2d 1285, 1288 (Ind. Ct. App. 2009) (internal quotations and citations omitted); *see also Grabill Cabinet Co., Inc. v. Sullivan*, 919 N.E.2d 1162, 1165 (Ind. Ct. App. 2010) ("The rules governing the interpretation and construction of contracts generally apply to the interpretation and construction of a guaranty contract." (citing *Kordick v. Merchs. Nat'l Bank & Tr. Co. of Indianapolis*, 496 N.E.2d 119, 123 (Ind. Ct. App. 1986))); *S-Mart, Inc. v. Sweetwater Coffee Co., Ltd.*, 744 N.E.2d 580, 585 (Ind. Ct. App. 2001).

Thus, if the Guaranty Contracts provide that the Defendants' liability continues notwithstanding the defenses alleged in the state suit, these cases are not parallel. In the state suit, the Defendants and Cinch Energy presented several defenses to the Plaintiff's breach of contract claim: (1) that the parties formed a novation, which would replace the Master Lease Agreement; (2) that any breach was excused by the Plaintiff's conduct, under a theory of

equitable estoppel; and (3) that the Plaintiff failed to mitigate its damages such that Cinch Energy owed no money.

However, the language of the Guaranty Contracts in this case explicitly continues liability of the guarantors under all these circumstances. The Guaranty Contracts state that "[t]he obligations of each Guarantor shall in no way be affected or impaired by reason of the occurrence" of certain conditions; one of them, condition (vi), is the sale of the equipment in question "to any party." Therefore, it is not clear on the face of the Guaranty Contracts that a novation to sell the equipment to Cinch Energy for a set amount would have necessarily extinguished the Defendants' liability under the Guaranty Contracts. Similarly, the questions of estoppel and mitigation are barred by language which provides that the guarantors' obligations continue "irrespective of any invalidity or unenforceability" of the Master Lease Agreement and by condition (vii), which continues the guarantors' liability even if the Lessee is released from the performance or observance of any of the agreements "by operation of law."

Indiana law has multiple examples of a guarantor's liability extending beyond that of the principal. For example, in *Loudermilk v. Casey*, which both parties cite in their briefs, the Indiana Court of Appeals specifically cited the unconditional language of Loudermilk's guaranty contract when determining that his liability was not as limited as the principal's liability. 441 N.E.2d at 1384. Further, when Loudermilk argued that a sale vitiated his liability under the primary contract at issue in that case, the court noted that "the terms of the sale agreement which formed a part of Loudermilk's contract contemplated the possibility of a sale of the operating rights. Loudermilk was on notice that such a sale was an event of default which could trigger his

8

liability." 441 N.E.2d at 1386. Similarly, the Defendants here were on notice that a contract to sell the equipment would not necessarily extinguish their liability under the Guaranty Contracts.

Other cases support *Loudermilk*'s contention that, if a sale contemplated in a guaranty contract is effectuated, the guarantor's liability is not extinguished. For example, in *Modern Photo Offset Supply v. Woodfield Group*, 663 N.E.2d 547, 550–51 (Ind. Ct. App. 1996), the court held that, where a guarantor "unconditionally and absolutely" guaranteed to the seller the payment of the purchase price, and the contract provided that the seller might take additional guarantors without altering liability, an additional agreement did not release the guarantor. *Modern Photo* does go on to note that a novation may release the original debtor. 663 N.E.2d at 551 (internal citations and quotations omitted). However, *Modern Photo* refers to a novation which would have extinguished the guaranty contracts; such a novation would also have extinguished the guarantor's liability. But in the state suit in this case, the Defendants alleged no facts and made no arguments which would establish that the Guaranty Contracts were extinguished by the alleged novation of the Master Lease Agreement. *Cf. Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1233–34 (Ind. 1994) (holding that, where an asset purchase agreement explicitly disclaimed that the new party assumed an employment agreement, a short period of continued employment did not constitute a novation). Here, the Guaranty Contracts are specific that a sale agreement does not extinguish them; with no allegations to the contrary in the state suit, the alleged novation of the Master Lease Agreement would not extinguish the Defendants' liability under the Guaranty Contract.[2]

---

[2] If the Texas court were to find a novation was formed, perhaps the amount of the liability might change; the parties have not fully briefed that point. However, *whether* the Defendants are liable under the Guaranty Contracts is the key issue in this case, not the amount for which they are liable.

District courts in the Seventh Circuit, though applying different state laws, have reached similar conclusions. For example, the Western District of Wisconsin found that abstention was not appropriate in similar circumstances. *See FirstMerit Bank N.A. v. Koenig*, No. 13-CV-534, 2014 WL 2743190 (W.D. Wis. June 17, 2014). Specifically, the court noted that, while the Wisconsin litigation and the federal litigation shared parties, they were not parallel because:

> FirstMerit is asserting the defendants' liability for completely different sets of promises in each case. In the state case, FirstMerit seeks foreclosure and replevin based on agreements that *secured* the loans it made to made to "K" Care. In contrast, the federal case seeks to enforce different agreements that *guaranteed* "K" Care's repayment of the loans. Although successful recovery in one case may reduce or eliminate FirstMerit's right to recover in the other case, neither court is poised to adjudicate or impose liability for agreements that are before the other tribunal.

*Id*. at *3; *see also Fofi Hotel Co., Inc. v. Davfra Corp.*, 846 F. Supp. 1345, 1352 (N.D. Ill. 1994) ("As the guaranty explicitly states that it is not dependent on the validity of the note . . . [,] the Ohio action and the federal action are not parallel as there is not a substantial likelihood that the state litigation will dispose of all claims presented in the federal case."); *Bank of Montreal v. McKenzie Methane Corp.*, No. 93 C 3610, 1993 WL 420985, at *7 (N.D. Ill. Oct. 18, 1993) ("The federal suit will decipher the rights and obligations of the parties under the Loan Agreement while the state suit will determine the rights and obligations of the parties under the Guarantees.").[3]

---

[3] The Plaintiff also cited numerous cases in which a court faced with a foreclosure action in state court declined to abstain from a federal action to enforce a guaranty; while the situations are not identical, they are informative. *See Wells Fargo Bank, Nat'l Assoc. v. Leafs Hockey Club, Inc.*, No. 13 C 2247, 2013 WL 5433789 (N.D. Ill. Sept. 30, 2013); *JLM Fin. Invs. 4 LLC, v. Aktipis*, No. 11 C 2561, 2012 WL 74856 (N.D. Ill. Jan. 9, 2012); *Mitsui Taiyo Kobe Bank, Ltd., v. First Nat'l Realty and Dev. Co., Inc.*, 788 F. Supp. 1007 (N.D. Ill. 1992).

The cases on which the Defendants rely do not hold otherwise. First, in *Corus Bank, N.A. v. de Guardiola*, 593 F. Supp. 2d 991 (N.D. Ill. 2008), the court found that "the liability of Borrowers and de Guardiola in both cases depends directly on the validity and enforceability of the same loan agreement. . . . Liability under the guaranty hinges on the Borrowers' liability under the Amended Loan Agreement and arises from the same real estate transaction." *Id*. at 994. As detailed above, the Defendants' liability here does *not* hinge on Cinch Energy's liability under the Master Lease Agreement; thus, the federal suit is distinguishable from the one before the court in *Corus Bank*. Similarly, the court in *Pence v. Lightning Rod Mutual Insurance Co.*, 203 F. Supp. 2d 1025, 1028–29 (S.D. Ind. 2002) abstained given that only the damages claim before it was not also pending in state court. In that case, the state suit would determine liability before the federal court could determine damages; whereas here, liability under two different contracts presents two distinct, non-parallel cases.[4]

The Court acknowledges that, while not parallel, the suits are very similar. Both involve substantially the same parties, and some of the same facts will be relevant to both suits. But the legal issue of liability is different in each suit because different contracts are at issue. The Master Lease Agreement is not squarely before this Court, and the Guaranty Contracts are no longer before the Texas state court. Even the Defendants acknowledge that "liability here may not absolutely hinge on the underlying liability of Cinch Energy." Defs.' Reply Mem. in Supp., ECF No. 30, p. 4. Therefore, the Court cannot say the suits are clearly parallel and follows the

---

[4] *Pence* is also distinguishable as the court initially considered the declaratory judgment action under *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (governing stays of declaratory judgment actions), and does not conduct a separate analysis of parallelism for the damages claim.

Seventh Circuit's direction to exercise jurisdiction if there is any doubt. *See Adkins*, 644 F.3d at 499; *see also Huon*, 657 F.3d at 645.

## CONCLUSION

The Court DENIES the Defendants' Motion to Dismiss for Lack of Jurisdiction [ECF No. 16].

SO ORDERED on July 10, 2019.

 s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT